Opinion
 

 JEFFERSON (Bernard), J.
 

 In count I of an information, defendant was charged with the commission of the felony of indecent exposure in violation of Penal Code section 314, subdivision 1, with a prior conviction of a violation of Penal Code section 314, subdivision 1. The charged offense was alleged to have been committed on March 4, 1976. The prior felony conviction was alleged to have been suffered on September 15, 1972. In count II of the information defendant was charged with having committed a similar offense in violation of Penal Code section 314, subdivision 1, on March 25, 1976. In count II it also was charged that defendant had suffered a prior felony conviction of indecent exposure in violation of Penal Code section 314, subdivision 1—the same prior felony that is alleged in count I.
 

 In both counts the allegation was that the defendant had willfully and lewdly exposed his person and the private parts thereof in a public place where there were present other persons to be offended and annoyed thereby. In each count of the information the allegations of the defendant’s conviction of a prior felony of indecent exposure were required to convert the provisions of Penal Code section 314, subdivision 1, from a misdemeanor to a felony is required by the provisions of Penal Code section 314 in existence on the dates of the alleged offenses. The provision of Penal Code section 314 provided that “upon the second and each subsequent conviction under subdivision 1 of this section, . . . every person so convicted is guilty of a felony, which is punishable by imprisonment in state prison, for not less than one year.”
 

 Defendant entered a plea of not guilty and denied the prior conviction. Subsequently defendant admitted the prior conviction. In a jury trial defendant was found guilty as charged in both counts. Defendant was sentenced to state prison for the term prescribed by law. The sentence was suspended and defendant was placed on probation for
 
 *941
 
 a period of five years under certain terms and conditions, one of which was that he spend the first year in the county jail. The case comes before us on defendant’s appeal from the judgment of conviction.
 

 The evidence introduced by the prosecution was essentially as follows: On March 4, 1976, at approximately 7 a.m., Kimberly Jo Siszer, a student at El Camino Community College, was standing in the hallway at the arts building, awaiting the start of her ceramics class. She noticed a man in the hallway who had no clothes on but who was wearing tennis shoes. Initially, the naked man was facing sideways, but turned facing her and stood in what was described as a muscle-man-type pose. She identified defendant as the naked man who immediately left the building. Michelle Giglia testified that she was a student at the same college and, on the same date and time in question, she was seated in her ceramics classroom with the door to the classroom being open. She noticed a man standing in the lobby of the building facing in her direction. The man was nude and was standing in the muscle-man-type pose. She described this pose as one involving the flexing of the muscles of one arm with the other arm on his waist or hip. Michelle identified defendant as the naked man in question.
 

 Both Kimberly and Michelle testified that defendant made no motions at all to any part of his body and did nothing to direct their attention to his private parts.
 

 • On the same date, at approximately 7:05 a.m., Harry Luwin, a police officer for the college, observed defendant running through the campus wearing only tennis shoes. Luwin testified that he tried to apprehend defendant, but was unable to do so when defendant ran into a building and out of sight.
 

 The prosecution’s evidence with respect to the March 25, 1976, incident was as follows: Officer Luwin testified that at approximately 7 a.m. on the date in question, he observed a nude man wearing only tennis shoes running across the track field at the El Camino Community College. Luwin testified that he and Dave Harris, a cadet with the college police department, followed defendant into a nearby women’s restroom, where they observed defendant putting on his clothes. Upon being asked by Luwin what he was doing in the restroom, defendant, responded that he had hidden his clothes there. Defendant gave negative answers to questions of whether he was a student and had any identification.
 

 
 *942
 
 Luwin also testified that defendant then struck Harris in the head with his right elbow, pushed Luwin aside, and ran out of the restroom. Defendant was caught and apprehended outside of the restroom.
 

 The defendant advances the following contentions of error ón appeal: (1) that the trial court committed prejudicial error in failing to instruct the jury,
 
 sua sponte,
 
 on a lesser included offense of disorderly conduct; (2) that the evidence was insufficient to support the jury’s findings that defendant entertained the requisite lewd intent at the time he exposed his private parts; and (3) that the trial court erred in admitting evidence of uncharged incidents in which defendant was observed to be nude.
 

 I
 

 Is the Misdemeanor Offense of Disorderly Conduct Set Forth in Penal Code Section 647, Subdivision (a), a Lesser and Necessarily Included Offense in the Felony Offense of Penal Code Section 314, Subdivision 1, to Require an Instruction Sua Sponte? Yes.
 

 The rule as to the duty of a court to instruct the jury,
 
 sua sponte,
 
 on various principles of law in criminal cases, is set forth in
 
 People
 
 v.
 
 Sedeno
 
 (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913], as follows: “ ‘It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury’s understanding of the case.’ [Citation.] (2) That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but
 
 not
 
 when there is
 
 no evidence
 
 that the offense was less than that charged. [Citation.] The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.]” (Italics added.)
 

 The requirement that a defendant is entitled to have the jury consider the question of his guilt of a lesser offense than the felony offense charged comes from Penal Code section 1159, which provides, in
 
 *943
 
 relevant part, that “[t]he jury, . .. may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged,...”
 

 The test to be used for analyzing whether a particular lesser offense is necessarily included in a greater offense is set forth in
 
 People
 
 v.
 
 West
 
 (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]. In
 
 West,
 
 the test to be applied is stated in the following language: “ The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.’ ”
 
 (Id.,
 
 at p. 612.)
 

 The felony offense—“indecent exposure”—of which defendant was convicted, is set forth in Penal Code section 314, subdivision 1, and is committed by a “person who willfully and lewdly, (either) [If] I. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby;. ..”
 

 The misdemeanor offense—“disorderly conduct”—which defendant claims to be a lesser and necessarily included offense, is set forth in Penal Code section 647, subdivision (a). The statutory provision states: “Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶ (a) ... who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view.”
 

 The felony offense of “indecent exposure,” set forth in Penal Code section 314, subdivision 1, cannot be committed unless the following two elements are present: (I) the defendant must willfully and lewdly expose the private parts of his person; and (2) such exposure must be committed in a public place or in a place where there are present other persons to be offended or annoyed thereby. A major element of the felony offense governed by Penal Code section 314, subdivision 1, is that of a willfully lewd exposure. In
 
 In re Smith
 
 (1972) 7 Cal.3d 362, 366 [102 Cal.Rptr. 335, 497 P.2d 807], the court defined a lewd exposure by stating “that a person does not expose his private parts ‘lewdly’ within the meaning of section 314 unless his conduct is sexually motivated. Accordingly, a. conviction of that offense requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual
 
 arousal, gratification,
 
 or affront.” (Fn. omitted; italics added.)
 

 
 *944
 
 A comparison of the two offenses—“disorderly conduct” and “indecent exposure”—makes it clear that a person who has committed a violation of Penal Code section 314, subdivision 1, a felony, has necessarily committed also a violation of Penal Code section 647, subdivision (a), a misdemeanor, since each of the two offenses requires that the perpetrator has engaged in “lewd” conduct in a public place. In
 
 Silva
 
 v.
 
 Municipal Court
 
 (1974) 40 Cal.App.3d 733, 739 [115 Cal.Rptr. 479], the court defined in part the lewd conduct proscribed by Penal Code section 674, subdivision (a), in the following language: “The lewd or dissolute or obscene conduct alluded to in Penal Code section 647, subdivision (a), concerns sexually related or motivated conduct, whether normal or perverted.”
 

 The CALJIC (misdemeanor) instruction which is commonly given in cases involving an alleged violation of Penal Code section 647, subdivision (a), defines the term “lewd” or “dissolute” in CALJIC instruction No. 16.402 by stating: “As used in the foregoing instruction, the words ‘lewd’ and ‘dissolute’ are synonymous and mean lustful, lascivious, unchaste, wanton, or loose in morals and conduct.”
 

 CALJIC (misdemeanor) instruction No. 16.402 was held to be a correct instruction by
 
 People
 
 v.
 
 Williams
 
 (1976) 59 Cal.App.3d 225 [130 Cal.Rptr. 460]. The
 
 Williams
 
 court stated that “[t]he instruction defining ‘lewd and dissolute conduct,’ CALJIC (misdemeanor) No. 16.402, plainly informed the jury of the sexual aspects of the offense charged. The instruction defined ‘lewd and dissolute’ as synonymous with ‘lustful,’ ‘lascivious,’ and ‘unchaste.’ The latter terms clearly equate with and connote to any reasonable juror the sexual element of the offense.”
 
 (Id.,
 
 at p. 232.)
 

 Sexual motivation is a prime requisite for conduct to constitute lewd conduct. It is a defense to a charge of lewd conduct that a defendant’s conduct did not exhibit the requisite “sexual motivation” to bring it within the ambit of lewd or dissolute conduct as proscribed by Penal Code section 647, subdivision (a). (See
 
 In re Birch
 
 (1973) 10 Cal.3d 314, 318, fn. 4 [110 Cal.Rptr. 212, 515 P.2d 12].)
 

 The same sexual motivation for public exposure of a person’s privates is an essential requirement of the offense proscribed by Penal Code section 314, subdivision 1. In accord with the holding in
 
 In re Smith, supra,
 
 the court in the case at bench gave CALJIC instruction No. 16.220 (misdemeanor) (1973 revision) as an integral part of the definition of the
 
 *945
 
 felony of “indecent exposure”: “Every person who intentionally exposes his private parts, in any public place, or in any place where there are present other persons who may be offended or annoyed thereby, if such exposure is made with the specific intent to direct public attention to his genitals for the purpose of his sexual arousal or gratification or to affront others, is guilty of a crime." In addition, the court in the case at bench instructed the juiy that “[i]n the crime of indecent exposure, the necessary specific intent is to direct public attention to his genitals for thé purpose of his sexual arousal or gratification or to affront others.” It is too clear for argument, therefore, that if a defendant possesses such necessary specific intent to constitute the felony offense defined in Penal Code section 314, subdivision 1, he necessarily has committed the misdemeanor offense of a violation of Penal Code section 647, subdivision (a).
 

 The People contend, however, that defendant’s defense was such that either he committed a violation of Penal Code section 314, subdivision 1, or no offense at all. This theory of the People is without substance. In the case at bench there was no evidence offered by the defendant. The prosecution’s evidence was such that the jury properly could find that the defendant lacked the necessary specific intent to “direct public attention to his genitals for the purpose of his sexual arousal or gratification or to affront others,” but still engaged in “lewd conduct” in a public place within the meaning of Penal Code section 647, subdivision (a), as that term is defined in
 
 Williams
 
 and as the court instructed the jury in CALJIC (misdemeanor) instruction No. 16.402.
 

 It was prejudicial and reversible error, therefore, for the trial judge
 
 not
 
 to instruct the jury,
 
 sua sponte,
 
 with respect to the misdemeanor offense set forth in Penal Code section 647, subdivision (a), as a lesser and necessarily included offense of the felony offense of a violation of Penal Code section 314, subdivision 1, as charged in counts I and II of the information.
 

 II
 

 The Inadmissibility of Evidence of Other Incidents in Which Defendant was Observed Nude on Occasions Other Than the Two Charged in the Information and the Error in the Instructions Relating Thereto
 

 
 *946
 
 The prosecution was permitted to introduce the testimony of various witnesses who had observed defendant in a nude condition on other occasions at El Camino Community College. Dora Escobedo testified that in February of 1976 she was in the vicinity of the arts building at approximately 7 a.m. and saw defendant jogging in her direction, wearing nothing but tennis shoes. Dora testified that it appeared that defendant did not want to go towards her but was prevented from going around her by the presence of buildings. She also said that as the defendant passed by, he said “good morning” to her and she returned the greeting. Dora also testified that a few days following this incident she saw the defendant, nude as before, in the hallway of the arts building.
 

 Lonnie Coleman testified that on March 2, 1976, at the same college and at approximately the same hour of 7 a.m., he observed the defendant wearing only tennis shoes and running in the vicinity of the physical education department.
 

 Michelle Giglia, who testified in connection with the March 4, incident charged in count I, also testified that on March 9, 1976, she saw defendant in the hallway of the ceramics building, standing nude in the muscle-man-type pose as she was entering the classroom. However, Michelle said that he did nothing to draw her attention to his genitals. On this same occasion on March 9, 1976, Kimberly Jo Siszer, who testified with respect to the March 4, 1976, charged incident, observed defendant standing in the hallway with no clothes on but not posing. She stated that she did not believe that defendant saw her on this occasion.
 

 Michelle Giglia also testified that on March 11, 1976, while she was seated in her ceramics class, she again saw defendant standing in the same muscle-man-type pose facing in her direction. She admitted that, as on the prior occasions, defendant did nothing to direct her attention to his private parts.
 

 The defendant makes the contention that evidence that he committed these other acts—not charged against him in the information—was relevant
 
 only
 
 to prove that he had a propensity or character trait to commit the offenses charged in the information, and was, therefore, inadmissible by virtue of Evidence Code section 1101, subdivision (a). The prosecution contends that evidence of the other acts committed by defendant was admissible on the issues of (1) identity, (2) intent, and (3) a characteristic method, plan or scheme. In connection with the evidence
 
 *947
 
 that defendant had committed acts other than those charged in the information, the trial judge gave CALJIC instruction No. 2.50: “Evidence has been received tending to show that the defendant committed acts other than that for which he is on trial. [1] The Court cautions you that such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes. [¶ Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show: [¶ 1. The identity of the person who committed the crime, if any, of which the defendant is accused; [¶ 2. A motive for the commission of the crime charged; [¶ 3. The existence of the intent which is a necessary element of the crime charged; [¶ 4. A characteristic method, plan or scheme in the commission of acts similar to the method, plan or scheme used in the commission of the offenses in this case. [¶ For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. [¶ You are not permitted to consider such evidence for any other purpose.”
 

 Evidence that the defendant committed crimes or acts other than the crimes charged in the information may be admitted if such evidence tends to be relevant on an issue
 
 other than
 
 to establish defendant’s propensity or character trait to commit the offenses charged in the information as a basis for finding him guilty of the offenses so charged. (Evid. Code, § 1101, subd. (b).) But it is error for a trial judge to give CALJIC instruction No. 2.50 and list
 
 four separate issues
 
 upon which the evidence is being received and which the jury may consider unless the evidence is relevant and admissible with respect to
 
 each
 
 of such four issues.
 

 In the case at bench defendant made no attack upon the issue of his identity. Hence, the evidence was erroneously received as to that particular issue—an
 
 undisputed
 
 issue in the action. Had defendant raised the defense of alibi or otherwise attacked the identification testimony of the witnesses with respect to the offenses charged in counts I and II of the information, the evidence of some of the other acts committed by defendant would have been admissible with respect to the identity issue. The time of the occurrences being at the same hour and at the same place and striking the same muscle-man-type pose could have made such evidence come within the principle set forth in
 
 People
 
 v.
 
 Haston
 
 (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91] and
 
 People
 
 v.
 
 Thornton
 
 (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], The
 
 Haston
 
 and
 
 Thornton
 
 principle provides that such evidence is admissible
 
 *948
 
 where there are
 
 highly distinctive
 
 common marks between the charged crime and the other crimes or other conduct for the inference of defendant’s identity to be drawn—that defendant is the perpetrator of the charged offense because he was the perpetrator of the uncharged other crimes or other acts.
 

 The issue of a characteristic method, plan or scheme is simply another way of describing the issue of
 
 identity,
 
 since the highly distinctive marks of similarity between the other acts and the offenses charged in the information lead to the inference that the same person was the perpetrator of the charged offense and the other offenses or acts. On such a theory, evidence that defendant was the perpetrator of other offenses or acts leads logically and reasonably to the inference that he was the perpetrator of the charged offense. In the instant case, however, since the issue of defendant’s identity is
 
 not
 
 contested by defendant, the evidence of the other acts committed by defendant have no relevancy under any theory of a common scheme plan or modus operandi. It is a well settled rule of evidence that evidence is
 
 irrelevant
 
 and, hence, inadmissible, when it is offered to prove an
 
 undisputed
 
 issue of fact. This rule of evidence follows from Evidence Code sections 210 and 350. Evidence Code section 350 provides that no evidence is admissible except relevant evidence, and Evidence Code section 210 defines “relevant evidence” in terms of evidence having a tendency in reason to prove or disprove a
 
 disputed
 
 fact.
 

 CALJIC instruction No. 2.50, which was given to the jury, also stated that evidence that defendant committed, on other occasions, acts similar to the offenses charged in the information, had been received on the issue of “a motive for the commission of the crime chargd.” A motive is a state-of-mind-or-emotion fact, which can have relevance under Evidence Code section 1101, subdivision (b), if such evidence establishes a motive from which a jury reasonably could infer that defendant acted in conformity with such state-of-mind-or-emotion fact of
 
 motive
 
 and, therefore, committed the offense charged in the information, In the instant case, however, evidence of other acts of nudity committed by defendant had no tendency in reason to establish any motive on defendant’s part. It was error, therefore, for the trial judge to instruct the jury that such evidence could be received on the issue of motive.
 

 The evidence that defendant committed other acts of nudity was relevant, however, on the one issue of the existence of the special
 
 *949
 
 sexual intent, which is a necessary element of the crime charged. The crime charged of indecent exposure required that the defendant have the specific intent to direct public attention to his genitals for the purpose of his sexual arousal or gratification or to affront others. Generally, a defendant’s intent must, of necessity, be established by circumstantial evidence. Defendant’s commission of similar acts on other occasions —not too far distant from the dates of the charged offenses—would tend, by reasonable inference, to establish that the acts charged in the information were committed by defendant with the requisite intent. (See Jefferson, Cal. Evidence Benchbook (1972) Principles of Relevancy, § 21.4, pp. 266-270.)
 

 In the giving of CALJIC instruction No. 2.50, the trial court should be careful to limit the issues upon which such evidence is relevant and admissible by striking from the instruction those issues upon which the evidence is not admissible.
 

 Although the defendant makes the contention in the instant case that evidence of the defendant’s commission of other acts of nudity should have been excluded by virtue of Evidence Code section 352, we do not find the contention to be meritorious. In view of the appropriate admissibility of such evidence on the issue of defendant’s sexual intent, there is no showing made that the danger of prejudice to defendant substantially outweighed the probative value of the evidence on this
 
 one
 
 issue. However, this does not detract from the fact that the trial court committed error and misled the jury by instructing the jury that it could consider the other acts as evidence on irrelevant, nonexistent and nondisputed issues of motive, characteristic scheme or plan and identity, and which could lead to use on the prejudicial and inadmissible issue of defendant’s propensity or character trait to commit indecent exposure offenses.
 

 Ill
 

 Effect of the Invalidity of the Felony Recidivist Provisions of Penal Code Section 314
 

 Under Penal Code section 314, as it read on the dates on which defendant is charged with having committed violations thereof, such violations were made a misdemeanor unless circumstances were present which raised the misdemeanor to a felony. The enhancement or
 
 *950
 
 recidivist clause of section 314 provided: “Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288 of this code, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison for not less than one year.”
 

 In
 
 In re Lynch
 
 (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], the enhancement or recidivist provision of Penal Code section 314, which raised the offense from a misdemeanor to a felony and imposed a sentence of not less than one year in prison, was declared void by reason of article I, section 6 of the California Constitution. The punishment provided by the recidivist provision of Penal Code section 314 permitted a defendant to be held in prison
 
 for life.
 
 The
 
 In re Lynch
 
 court held that a life sentence prescribed by section 314 inflicted a penalty so disproportionate to the crime as to violate the cruel or unusual punishment clause of the California Constitution (art. I, § 6).
 

 The
 
 In re Lynch
 
 court, however, did not deal with the question of the effect of its holding on whether the offense described in Penal Code section 314, without the recidivist punishment provision, should be treated as a misdemeanor or a felony. Under the facts of
 
 In re Lynch
 
 the court found it unnecessary to decide this question. But in
 
 Learning
 
 v.
 
 Municipal Court
 
 (1974) 12 Cal.3d 813 [117 Cal.Rptr. 657, 528 P.2d 745] the court held that the recidivist provision of Penal Code section 314 was severable from the remainder of the section, leaving the offense of indecent exposure with a prior conviction of indecent exposure a felony. With no valid penalty specified in section 314, the punishment becomes specified by Penal Code section 18
 
 [1]
 
 which sets forth the punishment for a felony if none other is prescribed.
 

 
 *951
 
 The errors we have discussed herein mandate a reversal of the judgment of conviction. “[I]t is reasonably probable that a result more favorable to defendant would have been reached in the absence of the errors” discussed herein.
 
 (People
 
 v.
 
 Duran
 
 (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322];
 
 Peoples v. Watson
 
 (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
 

 The judgment of conviction is reversed.
 

 Kingsley, Acting P. J., and Dunn, J., concurred.
 

 A petition for a rehearing was denied August 11, 1977.
 

 [1]
 

 On the dates of the alleged offenses involved in the case at bench. Penal Code section 18 provided, in pertinent part, that “[e]xcept in cases where a different punishment is prescribed by any law of this State, every offense declared to be a felony is punishable by imprisonment in any of the state prisons, not exceeding five years; . . . .”
 

 In 1976, the Legislature amended Penal Code section 314 to remove the recidivist punishment provision held unconstitutional by
 
 In re Lynch
 
 and inserted in its place a provision far less onerous than that declared to be in violation of the cruel and unusual punishment prohibitions of the California Constitution. The 1976 amendment to section 314 provides that upon a second and each subsequent conviction of section 314, subdivision 1, the person so convicted “is guilty of a felony, and is punishable by imprisonment in state prison." (See Stats. 1976, ch. 1139, § 182, p. 4796.) This amendment was made operative July 1, 1977. As a felony under the 1976 amendment to section 314, the punishment prescribed is now set forth in the 1976 amendment to section 18 of the Penal Code. Under the 1976 amendment to section 18, an offense declared to be a felony or punishable by imprisonment in a state prison carries a penalty of
 
 *951
 
 imprisonment in any of the state prisons for 16 months or 2 or 3 years. (See Stats. 1976, ch. 1139, § 98, p. 4776.) The amended section 18 also became operative on July 1, 1977.